UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEVIN JONES,

                    Plaintiff,                              Case No. 2:20-cv-244

v.                                                          Honorable Paul L. Maloney

DANIEL LESATZ et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Defendants Former AMF Warden Daniel Lesatz and AMF Deputy Warden Sarah Schroeder.

Plaintiff alleges that on August 31, 2018, Plaintiff was found guilty of assault and battery on staff.  Plaintiff was sentenced to ten days of punitive segregation and thirty days loss of privileges.  Plaintiff attaches a copy of the hearing report to his complaint, which shows that the evidence considered was as follows:

> Misconduct Report, Hearing Investigation Report, including hearing investigator's statement that prisoner refused to make a statement, considered.  A video shows prisoner struggling with two staff members.  Prisoner appears to be kicking at the staff members.  Other staff members arrive.  The video is marked confidential for security purposes.

(ECF No. 1-2, PageID.11.)  The "Reasons for Finding" section states:

> PD 03.03.105 defines assault and battery as an intentional non consensual touching of another person done either in anger or with the purpose of abusing or injuring another; physical resistance or physical interference with an employee.  Injury is not necessary but contact is.  The reporter describes that prisoner struck him on the left side of his head with a closed fist.  Officer Dingman then assisted in taking Jones to the floor where prisoner violently resisted the officers by kicking, spitting and striking the reporter with a closed fist.  Prisoner does not dispute the charge.  Prisoner's action was an intentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another.

(Id.)

On September 10, 2018, after completing his time in punitive segregation, Plaintiff was reclassified to administrative segregation.  Plaintiff claims that, under prison policy, the misconduct he received does not meet the criteria required for such a reclassification.  In addition, Plaintiff states that because his classification to administrative segregation was not for "an assault

on staff resulting in a serious physical injury," both the Warden's the Assistant Deputy Director's written approval were required for any reclassification to administrative segregation.  The Security Reclassification Notice states that Plaintiff was reclassified to administrative segregation because he could not safely be managed in the general population.  (ECF No. 1-3, PageID.12.)  Plaintiff's segregation behavior review, dated September 17, 2018, states that his reclassification was the result of punching an officer in the head, that Plaintiff participated in the interview process, and that he was advised to remain misconduct free.  (ECF No. 1-6, PageID.16.)

Plaintiff made a request to the ADD/Deputy Director for approval to be reclassified from administrative segregation, which was disapproved by Defendants on December 3, 2019. (ECF No. 7-1, PageID.17.)  The form notes that Plaintiff's staff victim was transported to the hospital for treatment following the assault.  (*Id.*)  In addition, the form notes that Plaintiff had received three misconducts since being classified to administrative segregation, including one for assault and battery on another inmate, and two for disobeying a direct order.  (*Id.*)

Plaintiff filed a grievance on January 27, 2020, regarding the continuation of his administrative segregation status.  In the response to his grievance, Prisoner Counselor T. Wilson states:

> Prisoner Jones was interviewed on 2/18/2020 and was repetitive of his claims.  The grievant assaulted Corrections Officer Odunuga on 8/26/18.  CO Odunuga was injured during the assault and was transported to Sparrow Ionia Hospital for treatment.  The grievant was prosecuted for the assault on CO Odunuga and was found guilty of Assault with Intent to Cause Great Bodily Harm on 6/4/19.  The grievant's 8/26/18 assault on staff resulted in serious injury and the grievant currently requires ADD approval prior to General Population placement.  A Request for Approval to Reclassify from Administrative Segregation (CSJ-283b) was completed for the grievant in accordance with PD 04.05.120, *Segregation Standards*.  The request was reviewed and disapproved by the Deputy Warden and Warden on 12/3/19.  The grievant will be given the opportunity to participate in an interview with the ADD during the next scheduled ADD interviews.  The Grievant is safely and properly housed in accordance with PD 03.03.130, *Humane Treatment*

*and Living Conditions for Prisoners*, and PD 04.05.120.  There is no evidence to suggest a violation of policy or procedure.

(ECF No. 1-8, PageID.18.)  Plaintiff filed a step II appeal, which was responded to on March 16, 2020.  In the response, the warden stated:

> Your claim is that your release from administrative segregation fictitiously requires written approval of the ADD.  This has been properly investigated and addressed at Step I.  the Step I response indicates that your release from administrative segregation does require written approval from the ADD.  A request was reviewed and disapproved by the Deputy Warden and the Warden on 12/3/19.  You will be given an opportunity to participate in an interview with the ADD during the next scheduled ADD interviews.  You have not provided any additional evidence to support your grievance.  At this time, you are being housed in accordance with PD 03.03.130 Humane Treatment and living conditions for prisoners and PD 04.05.120.  Based on the above, this grievance appeal is denied.

(ECF No. 1-9.)

On November 23, 2020, Assistant Deputy Warden T. Perttu and Assistant Resident Unit Manager T. Wilson performed a segregation review, noting that Plaintiff had most recently been interviewed by the warden on June 10, 2020, and by the ADD on March 18, 2020.  (ECF No. 1-6, PageID.16.)  The segregation behavior review form also indicates that Plaintiff received monthly reviews.  (*Id.*)

Plaintiff asserts that his reclassification and continued confinement in administrative segregation violates his rights under MDOC Policy Directive (PD) 04.05.120(KKK) and PD 03.03.105 Attach. A, as well as the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

4

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Violation of prison policy**

Plaintiff alleges that Defendants have violated prison policy by failing to distinguish between an "Assault and Battery (Staff victim)," for which he was found guilty, and

"Assault Resulting in Serious Physical Injury (Staff victim)," as described in PD 03.03.105 Attach. A.  He also complains that he was improperly classified to administrative segregation under PD 04.05.120(KKK).

A defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.  Plaintiff's claims concerning Defendants' alleged violations of policy therefore will be dismissed for failure to state a § 1983 claim.

IV.    **Eighth Amendment**

Plaintiff claims that his confinement in administrative segregation since his misconduct conviction for assault and battery on staff constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal quotations omitted).  To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary

6

standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his administrative segregation, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). As a consequence, Plaintiff fails to state an Eighth Amendment claim against Defendants.

## V.     **Fourteenth Amendment Due Process**

Plaintiff claims that his reclassification and continued administrative segregation violates his Fourteenth Amendment due process rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a

prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484-86. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But*

8

*cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990).  The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.*  However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985).  "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484.  In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

In this case, Plaintiff was reclassified to administrative segregation on September 10, 2018, following his misconduct conviction for assault and battery on a Corrections Officer. On December 3, 2019, Defendants Schroeder and Lesatz disapproved Plaintiff's request to be reclassified from administrative segregation, noting that Plaintiff had assaulted a fellow prisoner on January 30, 2019, and that he and not maintained a period of positive behavior to be considered

for a reduction in security classification.  (ECF No. 1-7, PageID.17.)   The form notes that Plaintiff's staff victim was transported to the hospital for treatment following the assault.  (*Id.*)  In addition, the form notes that Plaintiff had received a total of three misconducts since being classified to administrative segregation.  (*Id.*)

As earlier discussed, in a step I grievance response dated February 17, 2020, Prisoner Counselor T. Wilson noted that Plaintiff's staff victim had been taken to the hospital and that Plaintiff had been prosecuted and found guilty of Assault with Intent to Cause Great Bodily Harm in June of 2019.  (ECF No. 1-8.)  In addition, the MDOC Offender Tracking Information System for Plaintiff shows that he pleaded nolo contendere to the charge of assault with intent to commit great bodily harm less than murder, in violation of MCL § 750.84, and was sentenced to a   maximum   of   15   years   in   prison   on   July   16,   2019.   (*See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=789682.)  Both the step I and step II responses to Plaintiff's grievance indicate that Plaintiff was advised to raise his concerns at his next interview with the ADD.  (ECF Nos. 1-8 and 1-9.)

Finally, according to the documents attached to the complaint, Plaintiff received a segregation review with Assistant Deputy Warden T. Perttu and Assistant Resident Unit Manager T. Wilson on November 23, 2020, during which they noted that Plaintiff had most recently been interviewed by the warden on June 10, 2020, and by the ADD on March 18, 2020.  (ECF No. 1-6, PageID.16.)  The segregation behavior review form also indicates that Plaintiff had received segregation monthly reviews.  (*Id.*)

It is clear from the complaint and exhibits in this case that because Plaintiff has received segregation reviews on a monthly basis, has been interviewed by the ADD and Warden on a yearly basis, and has exhibited serious behavioral issues while in segregation, his current

10

confinement in administrative segregation does not implicate his procedural due process rights. Moreover, Plaintiff does not dispute that he received these hearings; that he was provided written decisions, stating the reasons his segregation was continued; that he pleaded nolo contendere to the criminal offense of assault with intent to commit great bodily harm less than murder, in violation of MCL § 750.84; or that the staff member he hit in the head had to go to the hospital. He argues only that, because one or more of the reviews referenced a different misconduct conviction than the misconduct charge to which he admitted, his placement in administrative segregation was improper.  In other words, he claims that his administrative segregation violates prison policy.

However, Plaintiff's due process interest does not turn on the policy directives, which are matters strictly of state law.  Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Plaintiff does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). Based on the factual record of the assault, which Plaintiff does not dispute, Plaintiff has received both administrative and criminal procedures, as well as regular segregation reviews.  Therefore, even if Plaintiff's confinement implicates his due process rights, Plaintiff has received all of the process to which he was entitled.

For both reasons, Plaintiff's Fourteenth Amendment claims are properly dismissed.

## VI.   Pending motions for appointment of counsel

Plaintiff has filed two motions for appointment of counsel (ECF Nos. 2 and 5). Because, as noted above, Plaintiff's complaint is properly dismissed for failure to state a claim, his motions for appointment of counsel are denied as moot.

11

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 28, 2021                              /s/ Paul L. Maloney
                                                       Paul L. Maloney
                                                       United States District Judge